RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2006 DEC -7 PM 4: 36

NANCY M.
MAYER-WHITTINGTON
CLERK

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Case # 06-1061-EGS
Appealed From NYSE Arbitration/
Case #2004-015821

## SANDEEP DALAL
*Plaintiff ("Mr. Dalal")*

v.

## GOLDMAN, SACHS & CO.
*Defendant ("Goldman")*

---

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

Submitted By:
Sandeep Dalal
*Pro Se*
2111 Wisconsin Avenue, NW
Washington, DC 20007
Telephone: (202) 342-1205

# TABLE OF CONTENTS

INTRODUCTION ... 1

STANDARD FOR SUMMARY JUDGEMENT ... 3

SUMMARY OF ARGUMENTS ... 3

FACTUAL CONTEXT ... 4

ARGUMENT ONE: MANIFEST DISREGARD OF THE LAW ... 7
    A. NY Law governs the contract among the parties ... 9
    B. NY Law requires the prevailing party be made whole ... 9
    C. NY Law imposes reasonableness doctrine ... 11
    D. Lack of reasoned opinion not an issue, for all claims of nearly equal value ... 12

ARGUMENT TWO: FAILURE TO DRAW ESSENCE FROM CONTRACT ... 13

ARGUMENT THREE: STATUTORY BASIS FOR MODIFICATION ... 14

ARGUMENT FOUR: ALTERNATIVE CLAIMS ... 15

SUMMARY ... 17

# LIST OF AUTHORITIES

| CASE | PAGE |
|---|---|
| *Advest, Inc. v. McCarthy,* 914 F.2d 6, 8-9 (1st Cir. 1990) | 8 |
| *Ainsworth v. Skurnick*, 960 F.2d 939, 941 (11th Cir. 1992) | 15 |
| *Apex Plumbing Supply, Inc. v. U.S. Supply Co.,* 142 F.3d 188, 193 (4th Cir. 1998) | 13 |
| *BDO Seidman v. Hirshberg*, 690 N.Y.S.2d 854, 856-57 (1999) | 1, 11 |
| *Bear, Stearns & Co., Inc. v. 1109580 Ontario, Inc.,* 409 F.3d 87, 90-91 (2d Cir. 2005) | 8 |
| *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 133 (2d Cir. 2000) | 3 |
| *David Kurke v. Oscar Gross & Son* (DC Cir. July 2006) | 2, 7, 8 |
|    Citing *LaPrade v. Kidder, Peabody & Co., Inc.,* 246 F.3d 702, 706 (DC Cir. 2001) | 8 |
|    (quoting *DiRussa v. Dean Witter Reynolds, Inc.,* 121 F.3d 818, 821 (2d Cir. 1997) | |
|    Citing *GMS Group, LLC v. Benderson*, 326 F.3d 75, 78 (2d Cir. 2003) | 8, 12 |
| *DiRussa v. Dean Witter Reynolds, Inc.,* 121 F.3d 818, 821 (2d Cir. 1997) | 8, 9 |
| *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. at 942 | 16 |
| *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 639 (2d Cir. 2000) | 3 |
|    Citing *Fagan v. New York State Elec. & Gas Corp.*, 186 F.3d 127, 132 (2d Cir. 1999) | |
| *Goldman v. Architectural Iron* (2nd Circuit 2002, Docket #02-7175) | 8 |
| *Graham v. James*, 144 F.3d at 239 | 1, 10 |
| *Halligan v. Piper Jaffray, Inc.,* 148 F.3d 197, 202 (2d Cir. 1998) | 8 |
| *Int'l Union, United Mine Workers v. Marrowbone*, 232 F.3d 383, 389 (4th Cir. 2000) | 13 |
| *Kanuth v. Prescott, Ball & Turben, Inc.*, 949 F.2d 1175, 1179-1181 (DC Cir. 1991) | 8 |
| *Lummus Global*, 256 F.Supp.2d at 605 | 15 |
| *Manville Forest Prod. Corp. v. United Paperworks*, 831 F.2d 72, 74 (5th Cir. 1987) | 15 |
| *Merrill Lynch v. Booker*, 808 F.2d 930, 933-34 (2d Cir. 1986) | 8 |
| *Merrill Lynch Inc. v. Jaros,* 70 F.3d 418, 421 (6th Cir. 1995) | 8 |
| *Mo. River Serv., Inc. v. Omaha Tribe of Neb.*, 267 F.3d 848, 855 (8th Cir. 2001) | 13 |

*New York Tel. Co. v. Communications Workers*, 256 F.3d 89, 91 (2d Cir. 2001)          9
  Citing *Halligan*, 148 F.3d at 202 and *DiRussa*, 121 F.3d at 823

*Post v. Merrill Lynch, Pierce, Fenner & Smith*, 421 N.Y.S.2d 947, 848 (1979)          1, 11

*Safeway Stores v. American Bakery*, 390 F.2d 79, 82 (5th Cir. 1968)          15

*Terwilliger v. Terwilliger*, 206 F.3d 248 (2d Cir. 2000)          1, 10

*Upshur Coals Corp. v. United Mine Workers*, 933 F.2d 225, 229 (4th Cir. 1991)          13

*U.S. Postal Serv.*, 204 F.3d at 527          13

*Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 268-269 (7th Cir.)          13

Mr. Dalal was the prevailing party at an arbitration held under the rules of the New York Stock Exchange ("NYSE"), upon which process he was awarded $25,000, that in lieu of *vested* stock that was owed to him, and which stock has a current market value of over $400,000. The discrepancy constitutes an 'evident miscalculation,' one that is both 'clear and unambiguous,' because the number of shares awarded to Mr. Dalal is known on the face of the contract and the market price per share too is equally easily determinable. The matter thus merits modification under statute, specifically under DC Code §16 (similar to NY Law, the UCA and the FAA).

The award (Exhibit C) also merits revision under common law, because it constitutes a manifest disregard of NY Law, which governs the contract among the disputants. NY Law has for long applied the 'reasonableness doctrine' in any determination of the forfeiture-for-competition provision in a stock award. Such controlling law was known to the arbitration panel, and Mr. Dalal had specifically cited cases such as *BDO Seidman v. Hirshberg*, 690 N.Y.S.2d 854, 856-57 (1999) and *Post v. Merrill Lynch, Pierce, Fenner & Smith*, 421 N.Y.S.2d 947, 848 (1979) in support of the same.

NY Law also required that Mr. Dalal be placed in as good a position as he would have been had Goldman fully performed the contract, which too Mr. Dalal had relied upon in his original Statement of Claim (Exhibit E), at hearings and finally in his Request for Modification of the award (Exhibit B). Mr. Dalal had specifically cited *Terwilliger v. Terwilliger*, 206 F.3d 248 (2d Cir. 2000)). NY Law also required that Mr. Dalal be paid pre-judgment interest as a matter of right, which too was cited to the arbitration panel, per *Graham v. James*, 144 F.3d at 239. All those constitute Mr. Dalal's dues by right of statute and common law.

Because Goldman has already filed a motion for summary dismissal, it is clear that it intends to rely on the 'black box' argument that Mr. Dalal has no basis of knowing why he won,

1

then speculating that the award possibly reflected settlement of a quantum meruit claim.[1] But then too Mr. Dalal would be owed multiples more than the current award, for the quantum meruit claim was itself equal to $375,000. In other words, it is unnecessary to speculate which theory of recovery won him his award.

Supporting Mr. Dalal's common law argument is the US Court of Appeals for the DC Circuit's ("DC Circuit") rulings on the manifest disregard standard, reiterated only a few months ago in *David Kurke v. Oscar Gross & Son* (DC Cir. July 2006). Per that standard, this Court is empowered to modify Mr. Dalal's award if (a) the arbitrators knew of the governing legal principle (which they did) but ignored it (which they did) or refused to apply it (which they did upon the request for modification) and (b) the law so ignored was explicit and clearly applicable the case (which it is) and (c) if in the absence of a reasoned opinion, no justification can be gleamed from the record to support the lesser amount awarded (and none can be found, for it is a simple multiplication, and the alternative claim was of similar value).

For reasons detailed in this motion, Mr. Dalal respectfully pleads that this arbitral award is that rare instance which insists on judicial review and revision, an argument that finds full support in the rulings of the DC Circuit. It stands as a manifest injustice for Mr.Dalal to have won at arbitration but then to have been handed less than one-sixteenth the current value of his vested stock. Arbitration was never intended to be a mechanism for turning the winning party into the losing party. Goldman can point to no statutory, common law or public policy prohibition that prevents reversal of that manifest injustice committed upon Mr. Dalal, especially since he was the prevailing party.

---

[1] That is especially ironical because Goldman had once argued that a quantum meruit claim can never be tagged onto a contractual claim but now seeks to benefit from the opposite stance

## STANDARD FOR SUMMARY JUDGMENT MET

Summary judgment is appropriate when there is no genuine issue as to material fact, and the moving party is entitled to judgment as a matter of law. *FRCP Rule 56(c); see Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 639 (2d Cir. 2000) (citing *Fagan v. New York State Elec. & Gas Corp.*, 186 F.3d 127, 132 (2d Cir. 1999)). All inferences are drawn in favor of the non-moving party. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000).

The material facts on which there is no genuine issue are twofold: (a) Mr. Dalal won and (b) Mr. Dalal's contract claim and quantum meruit claim are now of equal value, making it unnecessary to speculate which theory of recovery won him his award.

Mr. Dalal is entitled to summary judgment as a matter of law because irrespective of the basis of his win at arbitration, the reasonableness doctrine of NY Law prohibited forfeiture and having won, NY Law required him to be made whole for the full value of the stock forfeited.

## SUMMARY OF ARGUMENTS

1. Award constituted a manifest disregard of controlling law, as set forth by the DC Circuit, for the law was explicit and clearly applicable to the case, which the arbitrators knew of but ignored and then, upon a request for modification, explicitly refused to apply

   a.  NY Law governs the contract among the parties

   b.  NY Law requires that the prevailing party be made whole for the full value of the contractual claim

   c.  NY Law on forfeiture-for-competition contracts imposes the reasonableness doctrine, which prohibits termination of vested stock if it is not reasonable in terms of duration, scope and geography, as explained below.

   d.  Manifest disregard argument does not stand weakened by the lack of a reasoned

3

opinion, because the alternative claim was itself verifiably worth almost the same amount

2. Award 'fails to draw its essence from the underlying contract,' thus appearing to be based on arbitrators' 'personal notions of right and wrong;' Award is 'not rationally inferable from the contract,' which on its face states the number of shares; Award 'ignores the unambiguous language chosen by the parties' and thus 'amends and alters' the agreement.

3. Award created statutory basis for modification under DC Code §16 (and similar statutes). DC Law empowers this Court to modify an arbitral award if there was an evident miscalculation of figures, which courts have generally interpreted to cover any error that is both obvious and unambiguous. Although DC Law does not include a materiality standard, and the FAA does, this case easily meets either standard. It also empowers this Court to modify an arbitral award if it is imperfect in a matter of form not affecting the merits of the controversy.

4. Alternatively, Mr. Dalal brings a quantum meruit claim, and for the first time, an unjust enrichment claim, the latter never presented to the arbitration panel but which is set forth here under the principle of consolidating claims arising from the same dispute. Neither claim was ever subject to mandatory arbitration and is properly preserved.

### FACTUAL CONTEXT

The following facts apply to this motion for summary judgment. Mr. Dalal was the prevailing party in an arbitration of a dispute involving stock awarded Mr. Dalal in recognition of past services, which award was made to all employees and in anticipation of the initial public offering of the company's stock. Neither party argues that the vested stock constituted a right already duly earned and a compensation past due. The sole basis for termination of the IPO Award was Goldman' claim that Dalal had "engaged in competitive activity," making the awkward claim that a small $100 million startup small business investment company in

4

Washington DC was a competitor to a giant $50,000 million financial conglomerate with global operations. Even if Mr. Dalal's subsequent employer was a competitor, Goldman was prohibited by the 'reasonableness doctrine' of NY Law from terminating the award. Furthermore, top management had personally assured Dalal that he would be able to retain his vested stock because he had done virtually all the work for one year, that in a group with twenty-five other associates like himself. The assurance was noted in writing by an executive of the firm, which document was revealed during discovery and presented to the arbitration panel.

Although NYSE User Guide (Exhibit D) clearly provided Mr. Dalal the right to request and receive a reasoned decision, which request he made in advance of the appointment of arbitrators, none was provided. That failure nonetheless does not constitute a fatal problem for this appeal because irrespective of what the basis of the arbitration award may have been, be it a breach of contract claim or an alternative quantum meruit claim, the full amount owed was either $400,000 or $375,000 respectively, not $25,000 awarded.

Goldman's procedures required Mr. Dalal to wait three years before he could bring the arbitration. In his original Statement of Claim, Mr. Dalal made the following arguments why Goldman's actions were wrongful: (1) Mr. Dalal's vested stock was not contingent on future service with Goldman. (2) Mr. Dalal's subsequent employer was not a competitor, but one lacking the wherewithal to compete in any way with the banking behemoth. (3) In any event, Goldman could not prevent Mr. Dalal from seeking gainful employment with any and all competitors (only those that met three additional hurdles, which were clearly unmet). (4) The three additional hurdles were not met because Mr. Dalal's work was not "similar or substantially related" to work at Goldman, not work for which Dalal had "supervisory responsibility" at

Goldman and not work that called for the "same or specialized skills" as at Goldman.[2] (5) Management had additionally made an oral promise to Mr. Dalal that he would get to keep his vested stock even if he joined a competitor, which oral contract was corroborated by handwritten notes of a Goldman executive, as produced during discovery (and shown at hearing) and generally too, management had assured employees in writing that the vested stock was for past services, not future commitments. (6) Even if those five arguments are presumed to be unavailing, Goldman was prohibited by the reasonableness doctrine of New York law to terminate Mr. Dalal's stock.

Alternatively, Mr. Dalal argued that Goldman's actions violated the covenant of good faith and fair dealing implicit in all contracting and failed to recognize Mr. Dalal's quantum meruit claim for work done and delivered, which work constituted virtually all the work done by a group that had over 25 other associates. Indicative of Dalal's success at the time of the IPO Award was the remarkable statistic that over his two years, more bankers had given him an exceed rating than to any other and that it was more than the total reviews submitted by his peers That comment bolsters the need for fairness in the matter.

Mr. Dalal showed the arbitration panel a written document from an executive of Goldman promising that Mr. Dalal "Would Receive Formula Award." Courts have clearly given such contemporaneous handwritten notes weight, not what an interested party says after arbitration has commenced. Mr. Dalal also showed that Goldman did not even bother to obtain

---

[2] Goldman's contract violated all three requirements of the reasonableness doctrine. Firstly 'scope,' which allowed Mr. Dalal to work in unrelated lines of work in the financial industry, or be paid market wages in lieu thereof. That is also a source of the quantum meruit claim. Secondly, 'time,' which would allow Mr. Dalal to work after a few weeks or months, not prohibit him for three years, as Goldman's contract sought to do. Thirdly, 'geography,' which prevented Goldman from stopping Mr. Dalal from working in Washington, DC, a city it does not even have an office in, all three points repeatedly made to the arbitration panel.

6

any information about his employer until this litigation, which too showed that its decision was 'without reason and unsupported by substantial evidence.'

Goldman responded with novel theories that had no basis in the law.[3] Its main focus was to harass Mr. Dalal, sullying his reputation by contacting unrelated third parties on the pretext of seeking sensitive employment and tax information, none of which had anything to do with a contract dispute. Among others, it contacted employers, headhunters and employees younger than Mr. Dalal, with no knowledge about the matter, introduced witnesses with no knowledge of the dispute, distributed multiple binders of information to such unrelated parties, information which again had nothing to do with Goldman' defense. It thus breached the confidentiality of the contract and of the arbitration process.

### ARGUMENT ONE: MANIFEST DISREGARD OF THE LAW

The first argument relied upon for summary judgment is manifest disregard of law, a standard set forth by the DC Circuit in several decisions, and which was reiterated only a few months ago in *David Kurke v. Oscar Gross & Son (DC Cir. July 2006)*. Per that standard, this Court is empowered to modify Mr. Dalal's award if (a) the arbitrators knew of the governing legal principle (which they did) but ignored it (which they did) or refused to apply it (which they did upon the request for modification) and (b) the law so ignored was explicit and clearly applicable the case (which it is) and (c) if in the absence of a reasoned opinion, no justification can be gleamed from the record to support the lesser amount awarded (and none can be found, for it is a simple multiplication, and the alternative claim was of similar value).

---

[3] Goldman's novel legal arguments have evidently been rejected by the panel below. It argued that the statute of limitations had expired, that the doctrine of laches applies, that the standard of review at arbitration was whether Goldman's termination of vested stock had been "arbitrary and capricious," that punitive damages are not permissible in an arbitration, that quantum meruit claims are not permissible in arbitration and that the NYSE panel was not authorized to consider the matter, even citing cases that Mr. Dalal later showed supported the opposite of what Goldman needed.

The DC Circuit's opinion in *David Kurke v. Oscar Gross & Son (DC Cir. July 2006)* referenced many key judgments on the issue, and which Mr. Dalal respectfully highlights as controlling (those cases dealt with the more complex issue of vacating an arbitral award, not merely modifying it, which is all that Mr. Dalal is seeking):

> "In addition to the statutory grounds, "arbitration awards can be vacated . . . if they are in manifest disregard of the law." *LaPrade v. Kidder, Peabody & Co., Inc.*, 246 F.3d 702, 706 (DC Cir. 2001) (internal quotation marks omitted)...[T]o vacate an award under that standard, we ""must find that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether[,] and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case."" *LaPrade*, 246 F.3d at 706 (quoting *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 821 (2d Cir. 1997))."

That opinion also supports the principle that an award may be modified if no justification can be gleaned from the record, even when the award lacks a reasoned decision.

> "Moreover, when the arbitrators give no explanation for their decision, as commonly occurs in arbitration and as occurred in this case, we must confirm the award "if any justification can be gleaned from the record." *GMS Group, LLC v. Benderson*, 326 F.3d 75, 78 (2d Cir. 2003) (internal quotation marks omitted)."

Other cases decided by the DC Circuit[4] and the Second Circuit[5] are similarly supportive of Mr. Dalal's legal arguments. Given the DC Circuit's willingness to adopt many decisions of the Second Circuit, Mr. Dalal brings attention to *Goldman v. Architectural Iron* (2nd Circuit 2002, Docket #02-7175), which provides the best detail on how to determine whether or not

---

[4] The DC Circuit has upheld the manifest disregard standard in *LaPrade v. Kidder, Peabody & Co., Inc.*, 246 F.3d 702, 706 (DC Cir. 2001) and *Kanuth v. Prescott, Ball & Turben, Inc.*, 949 F.2d 1175, 1179-1181 (DC Cir. 1991) (which also discusses the essence of contract argument), in addition to *David Kurke v. Oscar Gross & Son* (DC Cir. 2006).

[5] See *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir. 1998); *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 821 (2d Cir. 1997); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Booker*, 808 F.2d 930, 933-34 (2d Cir. 1986); *Bear, Stearns & Co., Inc. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 90-91 (2d Cir. 2005). Other Circuits too have confirmed the manifest disregard standard: *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995) (discussing manifest disregard); *Advest, Inc. v. McCarthy*, 914 F.2d 6, 8-9 (1st Cir. 1990) (discussing manifest disregard).

arbitrators "knew" of a law, and that it was controlling:[6]

> "Manifest disregard can be established only where a governing legal principle is "well defined, explicit, and clearly applicable to the case," and where the arbitrator ignored it after it was brought to the arbitrator's attention in a way that assures that the arbitrator knew its controlling nature. *New York Tel. Co. v. Communications Workers of America Local 1100, AFL-CIO District One*, 256 F.3d 89, 91 (2d Cir. 2001) (citing *Halligan*, 148 F.3d at 202); see also *DiRussa*, 121 F.3d at 823 (holding that arbitrators are only charged with having knowledge of governing law identified by the parties). An arbitrator (even an arbitrator who is a lawyer) is often selected for expertise in the commercial aspect of the dispute or for trustworthiness, rather than for knowledge of the applicable law, and under the test of manifest disregard is ordinarily assumed to be a blank slate unless educated in the law by the parties."

### A. Mr. Dalal repeatedly informed the arbitrators, at filing, at hearing and in a post-award motion, that NY Law governs the contract among the parties

NY Law governs the contract underlying the vested stock awarded Mr. Dalal, set forth by

Goldman, the drafter of the document, in 'all caps/ bold' font style. The special emphasis on NY

Law was specifically highlighted to the arbitration panel by Mr. Dalal in his redirect of

testimony, at which time he told the arbitrators that the parties clearly intended for the contract to

be governed by NY Law than by any other term or condition, all of which were set forth in

normal font. The arbitration panel clearly acknowledged the same. In his post-award request for

modification too, Mr. Dalal referred to well-settled "New York law" three times. The same was

done in Mr. Dalal's original Statement of Claim, on pages 3, 5, 8, 12, 20-22 and 27.

### B. Mr. Dalal repeatedly informed the arbitrators, at filing, at hearing and in a post-award motion, that NY Law requires the prevailing party be made whole for the full value of the contractual claim, so the award stands in manifest disregard of NY Law

Mr. Dalal informed the arbitration panel that NY Law had a provision that he be made

whole for the full value of his claim. The original Statement of Claim (page 27) has a paragraph

---

[6] That the standard of knowledge is whether or not the plaintiff informed the arbitrator is also set forth in *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818 (2nd Cir. 1997), cert. denied, 522 U.S. 1049, which denied plaintiff's motion to vacate or modify award where arbitrator was unaware that the ADEA provided for an award of attorneys fees to the prevailing party, but the plaintiff did not inform the arbitrator of the governing law. That is not the case here because Mr. Dalal did inform the arbitration panel, and which is clearly evidenced by the record.

titled 'Make-whole Recompense In Amount Of IPO Award' and which clarified that "Any ambiguity as to whether or not Dalal would have or could have or should have sold his shares at higher prices than currently available must be settled in favor of the party that had been harmed, a well-established principle of New York law." At hearing, Mr. Dalal set forth his dollar claim upon clear reliance of the same provision of NY Law. In a post-award motion, Mr. Dalal specifically cited *Terwilliger v. Terwilliger,* a Second Circuit opinion in a dispute governed by NY Law, additionally citing another opinion on the question of pre-judgment interest, which too was first requested in Mr. Dalal's original claim.

> "I make the request on the strength of well-settled New York law, which provides that a party injured by a breach of contract is entitled to that amount of damages necessary to place the party in as good a position as it would have been in had the other party fully performed the contract. (See *Terwilliger, 206 F.3d at 248*). The contract is clear on that score…Furthermore, as requested in my Statement of Claim, I am owed interest. Under New York Law, pre-judgment interest is normally recoverable as a matter of right in an action at law for breach of contract (*Graham v. James, 144 F.3d at 239*), which all would agree accrues at 9%. Therefore, consistent with the award in favor of Sandeep Dalal, and well settled New York law, Dalal is owed 3,560 shares of Goldman Sachs, or cash [currently valued at over $700,000]. Alternatively, it would be a manifest disregard of applicable law for the honorable arbitrators to award an amount less than the greater of the two. The current award certainly is."

In sum, because the arbitration panel was informed of the applicability of NY Law, and because the panel knew NY Law has a mandatory principle to pay the prevailing party its full due, a point first set forth in the original claim, the panel evidently 'ignored' the same when it awarded Mr. Dalal only one-sixteenth of his original claim, or $25,000. When Mr. Dalal repeated the same in a post-award motion, the arbitration panel 'refused' to apply what it knew to be controlling case law. The second element of the manifest disregard standard, as set forth by the DC Circuit, focused on the question of whether controlling law was 'directly applicable' to the case at hand, which neither party has ever contested, not even in Goldman's reply to Mr. Dalal's Request for Modification. Thus the award stands as a manifest disregard of law.

**C. Mr. Dalal repeatedly informed the arbitrators, at filing, at hearing and in a post-award motion, that NY Law imposes the reasonableness doctrine, which prohibits termination of vested stock if it is not reasonable in terms of duration, scope and geography, so the award stands as a manifest disregard of NY Law**

Mr. Dalal informed the arbitration panel that NY Law has the reasonableness doctrine,

which prohibits termination of vested stock if it is not reasonable in terms of duration, scope and

geography. The original Statement of Claim clearly stated so on pages 8, 12, 20, 22-24, 26, part

of which is quoted here (page 23):

> "Goldman' termination violates the 'reasonableness doctrine' that must be applied when considering the validity of non-compete agreements under New York law. Footnote 5: Under New York law, for the non-compete to be enforceable, the restrictive covenants or conditions must be reasonable. Consider *BDO Seidman v. Hirshberg*, 690 N.Y.S.2d 854, 856-57 (1999) and *Post v. Merrill Lynch, Pierce, Fenner & Smith*, 421 N.Y.S.2d 947, 848 (1979). Reasonableness is usually determined in terms of duration, geography or scope of activities, presumably the legal reason why Goldman included three incremental hurdles under Section 4(b)(ii). It cannot be reasonable in terms of duration, geography or scope that Core Capital is a Competitive Enterprise to Goldman. The *de facto* non-compete agreement, which is what the IPO Award becomes if one concurs with Goldman point of view, is thus fatally flawed…Anticipating this problem, Goldman Sachs correctly introduced three incremental hurdles within Section 4(b)(ii), to make it reasonable, except that its interpretation of that section, whether on a standalone read of Competitive Enterprise or a focus on the throwaway language alone, then sidesteps those very same three terms."

At hearing, Mr. Dalal set forth the reasonableness doctrine in his opening remarks, in his

redirect of testimony and in his concluding remarks. Because the arbitration panel ruled in favor

of Mr. Dalal, his request for modification did not include this issue in that letter, relying only on

the prior claim to be made whole upon his win.

In sum, because the arbitration panel was informed of the applicability of NY Law, and

because the panel knew NY Law has a mandatory doctrine of 'reasonableness' that must be

applied to all forfeiture-for-competition contracts, a point first set forth in the original claim, the

panel evidently 'ignored' the full scope of the same (although it did rule in Mr. Dalal's favor).

The second element of the manifest disregard standard, as set forth by the DC Circuit, focused on

the question of whether controlling law was 'directly applicable' to the case at hand, which both parties concur, Goldman having stated the reasonableness doctrine at hearing too, much as Mr. Dalal did. Thus the award stands as a manifest disregard of law.

**D. Manifest disregard argument does not stand weakened by the lack of a reasoned opinion, because the alternative claim was itself verifiably worth $375,000, not far off from the current market value of the stock of $400,000; that alternative claim was one of quantum meruit, which too was set forth at filing, at hearing and in a post-award motion, so then too the award stands as a manifest disregard of NY Law**

Because Goldman has already submitted a motion seeking summary dismissal, its principle argument is clear, that Mr. Dalal cannot say why he won, and that he may have won for a quantum meruit claim. There are two problems with that reasoning. Firstly, the lack of a reasoned opinion cannot be a pretext for 'black-box' arguments, for this Court can easily investigate whether there was any basis to deny Mr. Dalal the full value of his claim. That was the conclusion of the DC Circuit when it relied on *GMS Group, LLC v. Benderson* (as cited), which clarifies that when there is no reasoned opinion, as was the case in this dispute, a court may investigate whether any justification can be gleaned from the record. That controlling law dispels any hope Goldman may have of prevailing on unsupported speculations only.

Secondly, once the approach set forth by the DC Circuit is applied, it becomes clear that even if Mr. Dalal had won on his quantum meruit claim, which is what Goldman has speculated, that claim was substantially similar in dollar value to the contractual claim. That too would then stand as a manifest disregard of NY Law, because the quantum meruit claim and underlying law was set forth in the original claim, on pages 3, 6, 25, and 27, and at hearing.

"Alternatively, if the honorable Arbitrators find in favor of Dalal only with respect to Argument VIII, the Quantum Meruit Claim, Dalal seeks cash in the amount of $375,000, which represents his market wages for 1999 (as reflected by an offer letter from a competing investment bank in Exhibit N) less what Goldman paid him for that year."

Although Goldman had previously argued that the quantum meruit claim is unavailable in

12

arbitration (which is an incorrect conclusion), and now suggests that claim to have been the basis of the award, those bait-and-switch tactics do not dilute the fact that NY Law on the matter is specifically relevant to this case, and thus then too, the award would constitute a manifest disregard of the law.

### ARGUMENT TWO: FAILURE TO DRAW ESSENCE FROM CONTRACT

**Award 'fails to draw its essence from the underlying contract,' thus appearing to be based on arbitrators' 'personal notions of right and wrong;' Award is 'not rationally inferable from the contract;' Award 'ignores the unambiguous language chosen by the parties' and thus 'amends and alters' the agreement**

The second argument relied upon for summary judgment is manifest disregard of law, a standard which too had been set forth by the DC and other Circuits in several decisions. An arbitrator's interpretation of a contract must be upheld only if it "draws its essence from the agreement." *Upshur Coals Corp. v. United Mine Workers, Dist.* 31, 933 F.2d 225, 229 (4th Cir. 1991). An arbitration award fails to draw its essence from the agreement when the result is not "rationally inferable from the contract." *Apex Plumbing Supply, Inc. v. U.S. Supply Co.,* 142 F.3d 188, 193 (4th Cir. 1998). Moreover, an award fails to draw its essence from the agreement if an arbitrator has "based his award on his own personal notions of right and wrong." *Upshur Coals*, 933 F.2d at 229. In such circumstances, a federal court has "no choice but to refuse enforcement of the award." *Int'l Union, United Mine Workers of Am. v. Marrowbone Dev. Co.*, 232 F.3d 383, 389 (4th Cir. 2000).[7] Even the most stringent example of that line of cases supports Mr. Dalal's argument, namely *Wise v. Wachovia Sec., LLC,* 450 F.3d 265, 268-269 (7th Cir.). There Judge

---

[7] See also *U.S. Postal Serv.*, 204 F.3d at 527 ("When the arbitrator ignores the unambiguous language chosen by the parties, the arbitrator simply fails to do his job."); although the authority of an arbitrator is broad, and subject to great deference under the applicable standard of review, "it is not unlimited" and the arbitrator may not "amend or alter the agreement," or "act without authority." *Mo. River Serv., Inc. v. Omaha Tribe of Neb.*, 267 F.3d 848, 855 (8th Cir. 2001) (internal quotation marks omitted) (vacating award where arbitrator awarded damages in contravention of express contractual provisions). For example, an arbitrator has acted in manifest disregard of the law if he "disregard[s] or modif[ies] unambiguous contract provisions." *Id.* (internal quotation marks omitted).

Posner conceded the right of arbitrators to be "incorrect or even wacky" but still confirmed the right of this Court for modification in one context, if "arbitrators had failed to interpret the contract at all," thus "exceeding the authority granted to them."

Certainly every one of the phrases used applies to the current context, for the contract among the parties on its face sets forth a specific number of shares due Mr. Dalal and sets forth applicability of NY Law and other terms and conditions. In truncating the award's value, the arbitration panel simply substituted the contract with its own notions of right and wrong, ignoring the unambiguous language set forth therein, and thus amended and altered the contract. There is simply no basis for the arbitration panel to have so dramatically miscalculated the amount of the award.

### ARGUMENT THREE: STATUTORY BASIS FOR MODIFICATION

**DC Code §16 empowers this Court to modify an arbitral award if there was an evident miscalculation of figures, which courts have generally interpreted to cover any error that is both obvious and unambiguous.[8] DC Code also empowers this Court to modify an arbitral award if it is imperfect in a matter of form not affecting the merits of the controversy.**

DC Code §16 empowers this Court to modify Mr. Dalal's award, for the contract on its face is worth a specific number of shares and the award is on its face an evident miscalculation of figures.[9] The cases cited by Goldman in its own motion for summary dismissal confirm that an evident miscalculation of figures occurs when there is a mathematical error in the arbitration award that is both obvious and unambiguous. Goldman has thus already acknowledged that to be a basis for modifying the award. Contract clearly set forth the number of shares awarded to Mr. Dalal, and given that the price of Goldman's stock is public knowledge, the award is arbitrary

---

[8] Although DC Law does not include a materiality standard, and the FAA does, this case meets that higher standard too.

[9] The complaint had referenced the "evident miscalculation of figures" set forth under the Uniform Arbitration Act, from which DC Code is derived, but Mr. Dalal is amending his complaint to ensure that his common law rights are not truncated by an over-reliance on the FAA or UCA.[9]

and capricious, and is certainly not based on the underlying contract.[10] So the amount of stock awarded Mr. Dalal is incontrovertible, stock with a face value of $400,000, and in the alternative $375,000, so an award of $25,000 cannot but have been an evident material miscalculation. Not only is the calculation a ministerial act but one that would not overturn the arbitrators' decision at all. What could be more obvious and unambiguous than a simple multiplication gone wrong by several hundred thousand dollars.

To presume otherwise runs afoul of *Argument Two*, because it means that the arbitration panel substituted its own personal notions of right and wrong or of *Argument One*, specifically of controlling law set forth in *Terwilliger*. It would be equally erroneous to take advantage of the lack of a reasoned opinion, because *NYSE's User Guide to Arbitration* confirmed Mr. Dalal's right to receive a reasoned decision, so long as he did so in advance of the trial, which he did.[11] In other words, pressing that argument would be wrong without requiring the arbitration panel to issue a reasoned opinion, which is already a count of the complaint.

## ARGUMENT FOUR: ALTERNATIVE CLAIMS

Alternatively, Mr. Dalal brings a quantum meruit claim, and for the first time, an unjust enrichment claim, one never presented to the arbitration panel but which is set forth here under the principle of consolidating claims arising from the same dispute. Neither claim was ever

---

[10] This motion has presumed that the "arbitrary and capricious" standard is subsumed within the "essence of the contract" requirement, but if it is not, then Mr. Dalal respectfully submits a whole line of cases which clearly provide for modification if an award is arbitrary and capricious, and which would always be so if a ground for the arbitrator's decision cannot be inferred from the facts of the case. *Ainsworth v. Skurnick*, 960 F.2d 939, 941 (11th Cir. 1992), cert. denied, 507 U.S. 915 (1993); *Lummus Global*, 256 F.Supp.2d at 605. Also see *Manville Forest Prod. Corp. v. United Paperworks Int'l Union*, 831 F.2d 72, 74 (5th Cir. 1987); *Safeway Stores v. American Bakery & Confectionery Workers*, Local 111, 390 F.2d 79, 82 (5th Cir. 1968).

[11] To quote from the guidebook, the parties can "arrange to have arbitrators issue a reasoned decision rather than the traditional type of arbitration award" (page 8), the only caveat being that "Without advance notice, it is strictly within the arbitrators' discretion whether or not to issue a reasoned decision" (page 17), but Mr. Dalal's very first filing gave clear notice.

subject for mandatory arbitration and is therefore properly presented to this Court, an argument which finds support in the US Supreme Court decision in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. at 942.[12] Because the facts supporting both alternative claims are not in doubt, or contested by Goldman, both claims are appropriate for summary judgment. Mr. Dalal seeks $375,000 on either claim.

The facts applying to both claims are the same, and which were never contested by Goldman at trial. Mr. Dalal worked for the benefit of Goldman and gave up lucrative alternative employments for its benefit. Mr. Dalal presented a list of deals he worked on, none of which were denied by Goldman to be the truth. To quote from Mr. Dalal's Reply to Goldman's Response to Statement of Claim:

"The honorable arbitrators may consider the incredible fact that Dalal was the sole Associate on projects on which Goldman Sachs earned approximately $45 million in fees, and on proposals on which Goldman Sachs could have earned additional potential fees of $30 million, substantially all the fees for his group."

Mr. Dalal's experience and expertise were used by Goldman in its marketing materials for the period from 1996 to 1999. Whether by chance, Mr. Dalal's mistake or misfortune, Goldman was enriched by actions it had not paid for or worked for, and should not be permitted to unjustly to enrich themselves at the expense of Mr. Dalal but should make restitution for the property received.

The same is true of the quantum meruit claim. Mr. Dalal expended significant time and resources to provide services to Goldman, including working full time for two years, doing substantially all the work among twenty five associates. Dalal provided the services requested with the reasonable expectation that he would be compensated for those services. Goldman

---

[12] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. at 942 held that arbitration is simply a matter of contract between the parties, a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.

16

accepted the services Mr. Dalal provided and gained value from those services provided. Mr. Dalal is entitled to the fair and reasonable value of the services he provided. Failure of the arbitration panel to consider this well settled law too constitutes a manifest disregard of the law.

## SUMMARY

For any one or more of the four arguments set forth above, Mr. Dalal respectfully requests this Court enter summary judgment in his favor, modifying the award to reflect the current market value of the stock of Goldman, plus interest, which is his right by law.

Respectfully Submitted,

BY SANDEEP DALAL
PLAINTIFF, *PRO SE*

COPY TO SULLIVAN & CROMWELL

17

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 7th day of December, 2006, he served a true and

correct copy of the foregoing Plaintiff's Motion for Summary Judgment in the Civil Action # 06-

1061-EGS, as follows:

Clerk's Office
US District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, DC 20001
(202) 354-3000
(By Hand Delivery x1 Chamber's Copy; 1x Clerk's Original)

GOLDMAN SACHS & CO.
C/o Jordan T. Razza
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, NW
Washington, DC 20006-5805
(202) 956-7500
(By Priority Mail x1 Copy)

Signed By
Sandeep Dalal
*Pro Se*
2111 Wisconsin Avenue, NW
Washington, DC 20007
(202) 342-1205