RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2006 DEC -7 PM 4: 36

NANCY M.
MAYER-WHITTINGTON
CLERK

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Case # 06-1061-EGS
Appealed From New York Stock Exchange
Arbitration Case #2004-015821

**SANDEEP DALAL**
*Plaintiff ("Mr. Dalal")*

v.

**GOLDMAN, SACHS & CO.**
*Defendant ("Goldman")*

---

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY DISMISSAL OF THE COMPLAINT

---

Submitted By:
Sandeep Dalal
*Pro Se*
2111 Wisconsin Avenue, NW
Washington, DC 20007
Telephone: (202) 342-1205

Mr. Dalal most respectfully requests this honorable Court to (a) dismiss Goldman's Motion for Summary Dismissal, for reasons set forth herein, (b) to enter a decision in favor of Mr. Dalal's Motion for Summary Judgment instead, for reasons set forth therein, and (c) for the leave of this Court to reserve the right to file an amended Complaint if any technicality is deemed to constrain Mr. Dalal's rights under the law.[1]

## ISSUE 1 OF 2: COMPLAINT IS TIMELY AND WAS PROPERLY FILED

**1. Goldman is incorrect in asserting that service by mail turned Mr. Dalal's Complaint to a motion under FAA; Service by mail is permitted by *FRCP Rule 4(h)*, which permits service in any manner consistent with local law, *SCRCiv Rule 4(c)* permitting service by mail without waiver of the opposing party; Proper service thus maintains the matter as a filing under DC Code, NY Law, UCA, Common Law and FAA, not just an FAA motion**

Mr. Dalal's Complaint is a filing made under various statutes and common law, including DC Code §16, pertaining to arbitration and appeal from arbitration; NY Law, which is substantially similar to DC Code; under the UCA (from which both state laws are derived); under common law; and under the FAA, all of which are relied upon variously in his filings. The point is made upfront because Goldman has mischaracterized the Complaint as an FAA motion to bolster its argument that Mr. Dalal's filing is time barred, which it is not (and would be timely even if it were an FAA motion), and to exclude Mr. Dalal's common law arguments (which may become unavailable if this were an FAA motion).

Goldman does so solely on the argument that service was made by mail, without

---

[1] Mr. Dalal intends to amend his Complaint if needed, upon leave of this Court, to clarify the legal theories set forth therein, to make doubly sure that his claim is written to avail of each legal theory cited therein, and which is not put into silos, and that Goldman is not successful in truncating Mr. Dalal's common law theories. For the purpose of this motion, Mr. Dalal requests this Court consider every legal theory cited therein to be available to his every claim. In other words, Mr. Dalal relies on the full scope of DC Code, UAA, FAA and Common Law, as available to each theory of recovery. Mr. Dalal also pleads that given the prospect of a dispositive determination of this case, the parties be given time at a judicial conference to address any issues inadvertently left out or which deserve further focus. Should this Court determine that neither motion meets the very high standard set for summary determinations, Mr. Dalal pleads for a speedy scheduling order that recognizes this case as an appeal from an arbitration, not an original litigation, and which requires no discovery and deposition but only customary briefs and a trial.

1

obtaining waiver of the opposing party, and therefore Mr. Dalal has not effected service of the Complaint under *FRCP Rule 4(c)*. But that is an incorrect argument because *FRCP Rule 4(h)(1)*, which references *Rule 4(e)(1) & (2)*, clearly allows service in any manner consistent with local law in which this Court is situated, which is DC law, and whose Superior Court *Rule SCRCiv 4(c)(3)* clearly allows summons to be served by mail without obtaining waiver. Goldman thus misleads this Court in its chief assertion, dramatizing the matter by referring to his Complaint under quotation marks or as a motion, but lacks any basis to do so.[2]

**2. Statute of limitations questions are procedural and hence governed by DC Law; Timely motions toll the time for an appeal under DC Law; *DC Code §16-4317* explicitly defines a 'final order' in the context of an arbitration decision, which would be moot if no tolling was available under local law; Complaint timely filed within 90 days of Final Order; In any event, common law theories do not rely on FAA and thus cannot be barred by FAA**

Because Federal Courts invariably apply the procedural law of the jurisdiction in which they are seated, and DC Courts generally hold statute of limitations questions to be procedural issues, and to which they then apply their own law, DC Law applies to the question of timeliness.[3] DC Code §16 provides for the deferral of an appeal for timely and proper motions for reconsideration, doing so to avoid the prospect of a premature appeal, of simultaneous appeals at two venues and of filing an appeal and then sitting on it until determination below. Any doubt on that score is cleared by *DC Code §16-4317: Appeals* pertaining to arbitrations and which specifically sets forth the concept of a "final order."

---

[2] To the extent there is a minor, inadvertent error made in the filing, Mr. Dalal requests this Court under FRCP Rule 61 to "disregard any error or defect in the proceeding which does not affect the substantial rights of the parties" and to give him leave to fix the error.

[3] In *AI Trade Fin., Inc. v. Petra Int'l Banking Corp., 62 F.3d 1454 (DC Cir. 1995)*, the Circuit Court commented that "[l]ooking to the D.C. choice-of-law rules, we see that they treat statutes of limitations as procedural, and therefore almost always mandate application of the District's own statute of limitations." Id. at 1458 (citations omitted); "Under customary choice of law principles, the laws of the forum…apply to matters of procedure…and, save where limitations is part of the cause of action itself, [a] limitation on the time of suit is procedural and is governed by the law of the forum." *Huang v. D'Albora, 644 A.2d 1, 4 (D.C. 1994)* (internal quotation marks and citations omitted).

2

*DC Code §16 Arbitrations:* "(a) For purposes of writing an appeal, the following orders shall be deemed final:...(3) An order confirming or denying an award...(b) An appeal...shall be taken in the manner and to the same extent as from any other order or judgment in a civil action." *(§16-4317 Appeals)*

In other words, timeliness is treated as a procedural question by DC Courts, and which are invariably determined under DC Law. That is especially so because the common law theories relied upon by Mr. Dalal are not statutory rights, and therefore cannot be barred by a statute which does not source those claims. Mischaracterizing the Complaint as an FAA motion does not overcome those well-settled practices.[4]

Therefore, Mr. Dalal had 90 days after delivery of the final order issued in his favor by an arbitration panel of the NYSE ("Final Order"), dated March 9, 2006, postmarked March 10, 2006 and delivered by First Class Mail no earlier than March 12-14, 2006. This Complaint was sent on June 7, 2006 by Fedex overnight, and was therefore done within 90 days of delivery of the Final Order, and cannot be time barred. Mr. Dalal's motions were akin to timely Rule 59 motions, which invariably toll the limitations period on any appeal, an argument that finds full support in DC Code's focus on the concept of a final order (versus an interim one).

**3. Initial order clearly referred to a revised award to be issued later, so it was on its face not an appealable order; Final Order was not signed by the arbitration panel, as required by NYSE Rule 627(a), and which thus remains undelivered under DC Code, and the limitations period not begun yet; Goldman cannot rely on method of service or other technicalities without addressing these concerns, which are far more fatal**

Even if this Court were to assume that Mr. Dalal's Complaint is an FAA motion, which it is not, or to assume that the FAA does not provide for tolling of the limitations period upon filing a motion for reconsideration, Goldman's motion fails. It does so for two reasons. Firstly, the initial order of the arbitration panel promised that "in the near future the Exchange will send the

---

[4] Goldman's argument that the 90-day period applies from the initial, interim order is too narrow a reading of FAA and DC Law, or any other rule on appeal. It is akin to arguing that FRCP requires an appeal of a decision of this Court within 30 days without taking into account the fact that timely Rule 59 motions invariably toll the clock.

3

parties a revised award" (Dalal Exhibit C), which self-description is sufficient to conclude that it did not constitute delivery of an appealable order.

Secondly, NYSE Rule 627(a) requires that the arbitration panel must sign all decisions. However the Final Order, disposing off Mr. Dalal's motion for reconsideration, was signed by an NYSE employee only and to date, no copy of the Final Order has been signed by the arbitration panel. For that reason, the statute of limitations has still not begun to run, for the document has not yet been 'delivered' under DC Code, which does not refer at all to when an order was filed just the timing of its "delivery to the applicant."[5]

Goldman should not prevail on the technical argument that service was not effected (which of course it was) and that therefore the Complaint is an FAA motion (which it is not), while ignoring two fatal arguments, that the initial order of December 7 2005 carefully chose to caveat itself as an interim one and the final order has yet to be signed by the arbitration panel.

**4. Goldman waived the right to challenge the timeliness of Mr. Dalal's Complaint when it failed to challenge the timeliness of his Request for Modification, which was filed within the prescribed 20 days of the revised award but not of the interim order; neither the NYSE nor Goldman suggested a delay, or that the original order was the relevant one; at a minimum, Goldman lulled Mr. Dalal into non-action**

Much as the decision of this Court must be appealed within 30 days, so must a decision of an arbitration panel be appealed within 20 days. Notably, that 20 day limitation period was calculated by the NYSE off the revised order of January 20, 2006, not the initial order of

---

[5] 16-4312. Modification or correction of award: (a) Upon application made within ninety days after delivery of a copy of the award to the applicant, the Court shall modify or correct the award where: (1) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award; (2) The arbitrators have awarded upon matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or (3) The award is imperfect in a matter of form, not affecting the merits of the controversy. (b) If the application is granted, the Court shall modify and correct the award so as to effect its intent and shall confirm the award as so modified and corrected. Otherwise, the Court shall confirm the award as made. (c) An application to modify or correct an award may be joined in the alternative with an application to vacate the award.

December 7, 2005. Mr. Dalal was told to await receipt of the revised order dated January 20, 2006 before submitting his Request for Modification, which he did. Goldman's letter dated February 22, 2006 (Dalal Exhibit F) constituted its only Response to Mr. Dalal's Request for Modification of Award. It never protested that Mr. Dalal's filing was late, even though it was over 20 days past the original order; neither did the NYSE. The initial order was therefore deemed by all parties to be an interim order, not a final, appealable one.

If Goldman is presumed to have the right to reverse course now, then too Mr. Dalal is protected, because the lulling doctrine of DC Law prohibits Goldman from relying on the statute of limitations if it had done *anything* to lull Mr. Dalal into inaction.[6] If Goldman had made its objection known at the time the Request for Modification was filed, Mr. Dalal would have had ample opportunity to comply with Goldman's version of the limitations period. In sum, the March 9, 2006 date is the determinative date on the issue of the timeliness of Mr. Dalal's Complaint, and Goldman is prevented by law, precedent and its own actions to argue otherwise.

### ISSUE 2 OF 2: LAW AND PRECEDENT SUPPORT CORRECTION OF AWARD

**1. Mr. Dalal was the prevailing party at arbitration; Current value of shares is on its face calculable to be worth over $400,000 although current award stands at $25,000; it stands as an evident miscalculation of the figures under DC Code and UAA**

Every case cited by Goldman empowers (and indeed burdens) this Court to modify Mr. Dalal's award, for the contract on its face is worth a specific number of shares and the award is on its face an evident miscalculation. Goldman's precedents clearly confirm that an evident miscalculation of figures occurs when there is a mathematical error in the arbitration award that is both obvious and unambiguous. The amount of stock awarded Mr. Dalal is incontrovertible, stock with a face value of $400,000, so an award of $25,000 cannot but have been an evident

---

[6] *Anthony Ray v. Thomas Queen (DC 2000), 747 A.2d 1137.* See also *Bailey v. Greenberg, 516 A.2d 934, 937 (D.C. 1986)* (quoting *Hornblower v. George Washington Univ., 31 App. D.C. 64, 75 (1908)*).

5

material miscalculation, which Goldman concedes is a permissible basis for correcting the award. Not only is the calculation a ministerial act but one that would not overturn the arbitrators' decision at all. What could be more obvious and unambiguous than a simple multiplication gone wrong, that too by several hundred thousand dollars.

Goldman seeks to sidestep that reality with the clever argument that Mr. Dalal cannot say for sure why the smaller award was made or even what claim it was intended to satisfy. However, in a court of law, reasoning and rebutting must be consistently done. For example, Goldman asserts that "Dalal's assumption that the panel's Award even related to his RSU claim is unfounded" (Motion at 7). It later speculates that the arbitration panel "may well have based its award on Dalal's quantum meruit claim" (Motion at 7). But then it rejects that legal theory as a basis for recovery. Such bait and switch tactics have for long been discouraged by estoppel and other doctrines. If Goldman believes that the $25,000 was not in satisfaction of the contractual claim, it must suggest what claim it did satisfy, so that a fair counterargument may be made.

**2. Given Goldman's bait and switch tactics about the basis of the award, this Court must hold Goldman to one or the other argument, or direct the arbitration panel to provide a reasoned decision, which the NYSE User Guide clearly gave Mr. Dalal the right to seek**

Mr. Dalal brought a breach of contract claim for stock, which is now worth over $400,000, and alternatively, a quantum meruit claim for $375,000. Given that he prevailed, he must have won one or the other claim, or both, in which case he cannot be paid lesser than the lower of those two amounts under NY Law (specifically *Terwilliger*, 206 F.3d at 248). Goldman should not avoid liability because this Court fails to hold it to one or the other argument. At a minimum, this Court can ask the arbitration panel to clarify which theory of recovery won Mr. Dalal his award, and if not, give the winning party the benefit of doubt.

Here too, Goldman's Motion makes an error, for the *NYSE's User Guide to Arbitration*

6

confirms Mr. Dalal's right to receive a reasoned decision, so long as he did so in advance of the trial, which he did. To quote from the guidebook, the parties can "arrange to have arbitrators issue a reasoned decision rather the traditional type of arbitration award" (page 8), the only caveat being that "Without advance notice, it is strictly within the arbitrators' discretion whether or not to issue a reasoned decision" (page 17), but Mr. Dalal's very first filing gave clear notice.

**3. Mr. Dalal was the prevailing party at arbitration and NY Law requires he be made whole for whatever he was owed under Goldman's contractual obligation; Current value of shares is over $400,000 while current award stands at $25,000; It stands as a manifest disregard of the law, failing to draw its essence from the contract, which highlights the applicability of NY Law in All Caps/ Bold font.**

It is black letter NY Law that once a determination is made in favor of the plaintiff/ claimant, such party must invariably be made whole for whatever was owed under the contract so breached (*Terwilliger*, 206 F.3d at 248). The law must be applied to place Mr. Dalal in as good a position as he would have been had Goldman fully performed the contract.[7] Not giving Mr. Dalal the equity he was owed is especially a manifest disregard of the law, because the amount owed by Goldman was set forth clearly on the stock certificate and because the contract was subjected to the laws of New York, both points emphasized by Mr. Dalal and acknowledged by the arbitration panel. Equally truly, the only instance in which Goldman wrote the contract in 'Bold/ All Caps' style was in reference to New York law, which the arbitration panel acknowledged. All those facts confirm that for the award to draw its essence from the contract, it must not manifestly disregard NY Law.

Goldman excuses itself from the burden of its own arguments by asserting that Mr. Dalal has no way of knowing that the $25,000 was awarded in settlement of his claim of stock and not

---

[7] Here a clarification is in order, because although Count One of the Complaint focuses on the "evident miscalculation of figures" under the UAA (specifically under the DC Code §16), and Count Two focuses on the manifest disregard of the law (but which appears to only cite the reasonableness doctrine and employee choice doctrines), Mr. Dalal always intended at trial to rely on the manifest disregard theory to also argue that NY Law requires he be made whole for what he was owed under the contract.

some other dues. As mentioned earlier that is a bait and switch tactic. Even worse, it suggests that the award is not rooted in the contract and therefore reflects the arbitrators' "own personal notions of right and wrong" (GS Motion at 7), which suggests another basis for modification.

Additionally, the award constitutes a manifest disregard of law for a second reason, for its failure to adhere to the reasonableness and employee choice doctrines under NY Law severely impact Goldman's argument that it can deny Mr. Dalal's stock award because he went to work for a competitor. The panel was aware of both doctrines and acknowledged its awareness of both at trial. In ignoring those doctrines, the arbitration panel has given this Court a robust basis to modify the award, because both doctrines are very relevant to this case, both are well known to employment law and both were known to the arbitrators.

The legal precedents on manifest disregard are very supportive of Mr. Dalal's arguments. The US Court of Appeals for the DC Circuit's ("DC Circuit") reached the same conclusion in *David Kurke v. Oscar Gross & Son (DC Cir. 2006), LaPrade v. Kidder, Peabody & Co., Inc., 246 F.3d 702, 706 (DC Cir. 2001)* and *Kanuth v. Prescott, Ball & Turben, Inc., 949 F.2d 1175, 1179-1181 (DC Cir. 1991)* (discussing the essence of contract argument). Only a few months ago, the DC Circuit reiterated in *David Kurke* that this Court is empowered to modify Mr. Dalal's award if (a) the arbitrators knew of the governing legal principle (which they did) but ignored it (which they did) or refused to apply it (which they did upon the request for modification) and (b) the law so ignored was explicit and clearly applicable the case (which it is) and (c) if in the absence of a reasoned opinion, no justification can be gleaned from the record to support the lesser amount awarded (and none can be found, for it is a simple multiplication, and the alternative claim was of similar value).

The Second Circuit has a similar standard, and which is mentioned here because NY Law

applies. See *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir. 1998) (citing *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 821 (2d Cir. 1997); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Booker*, 808 F.2d 930, 933-34 (2d Cir. 1986); *Bear, Stearns & Co., Inc. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 90-91 (2d Cir. 2005). Other circuits have also concurred *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995); *Advest, Inc. v. McCarthy*, 914 F.2d 6, 8-9 (1st Cir. 1990). Even the most stringent example of that line of cases supports Mr. Dalal's argument, namely *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 268-269 (7th Cir.). There Judge Posner conceded the right of arbitrators to be "incorrect or even wacky" but still confirmed the right of this Court for modification in one context, if "arbitrators had failed to interpret the contract at all,...[for then] they exceeding the authority granted to them." Clearly that was the case in this instance.

**4. Mr. Dalal's Quantum Meruit Claim and Unjust Enrichment Claims are alternative theories of recovery, and both could have been brought directly to this Court, without ever being put to an arbitration panel; Mr. Dalal did so only to preserve the custom under NY Law that all related claims be considered together; FAA cannot preclude either claim, because the obligation to arbitrate never covered Mr. Dalal's alternative theories of recovery, and doing so was merely done out of abundant precaution**

Goldman is incorrect in arguing that Mr. Dalal's quantum meruit and unjust enrichment claims are without merit, and that neither constitutes grounds for modification of an appeal. Both claims are set forth as alternative theories of recovery, and neither claim was ever subject to mandatory arbitration. Certainly, neither arises out of the FAA, both evidently common law claims at the panel below and which remain common law claims at this Court above. Mr. Dalal included both at arbitration out of abundant caution, per the understanding that in NY Law, there is a principle to bring all related claims together. Mr. Dalal had the right to bring suit under either or both theories of recovery directly to this Court, without first including it in his arbitration claim. Neither was discussed at all at arbitration, both extraneous to the main dispute.

9

There is a second problem with Goldman's reasoning on this issue. On the one hand, it speculates that the arbitration panel "may well have based its award on Dalal's quantum meruit claim" (Motion at 7) but then rejects that claim as a basis for modifying the award (Motion at 8). A theory of recovery upon which Mr. Dalal supposedly prevailed must very much be a theory he can rely upon to modify the award, especially since it is a common law claim.

## SUMMARY

For all reasons set forth above, Goldman's Motion must be dismissed and Mr. Dalal's Motion for Summary Judgment affirment.

Respectfully Submitted,

*/s/ Sandeep Dalal*
BY SANDEEP DALAL
PLAINTIFF, *PRO SE*

COPY TO SULLIVAN & CROMWELL

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 7th day of December, 2006, he served a true and correct copy of the foregoing Plaintiff's Reply to Motion in the Civil Action # 06-1061-EGS, as follows:

Clerk's Office
US District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, DC 20001
(202) 354-3000
(By Hand Delivery x1 Chamber's Copy; 1x Clerk's Original)

GOLDMAN SACHS & CO.
C/o Jordan T. Razza
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, NW
Washington, DC 20006-5805
(202) 956-7500
(By Courier x1 Copy)

*Signature*
Signed By
Sandeep Dalal
*Pro Se*
2111 Wisconsin Avenue, NW
Washington, DC 20007
(202) 342-1205
