ORIGINAL

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

RECEIVED
AUG 1 0 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Case # 06-CV-1061-EGS
Appealed From New York Stock Exchange
Arbitration Case #2004-015821

**SANDEEP DALAL**
*Plaintiff ("Mr. Dalal")*

v.

**GOLDMAN, SACHS & CO.**
*Defendant ("Goldman")*

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
SEEKING DISMISSAL OF PART OF THE COMPLAINT**

---

Submitted By:
Sandeep Dalal
*Pro Se*
Address To Be Updated
Telephone:  (202) 329-7534 (Mobile)

Mr. Dalal respectfully submits this timely response in opposition to yet another motion by Goldman seeking dismissal of his Complaint.[1] For reasons set forth below, the motion is on its face frivolous. It certainly misleads this Court with glaring errors of fact and law, errors which are addressed in Part 1 of this response.

Additionally, because Goldman's motion is essentially seeking to apply the FAA's statute of limitations to non-FAA claims, doing so with the help of the doctrine of res judicata, Mr. Dalal cannot but reemphasize once again that the May 2007 Opinion stands in clear conflict with controlling law as set forth by the US Supreme Court and the Court of Appeals for the DC Circuit. Per those binding decisions, the FAA was never intended to occupy the whole field of arbitration but only intended to give meaning to the terms of privately negotiated arbitration agreements. Applying res judicata would thus worsen the error of the May Opinion, because it would not only apply the FAA where New York Law should have applied, but additionally allow the application of the FAA's limitations period to entirely unrelated, non-FAA claims. Part 2 therefore repeats the arguments set forth in Mr. Dalal's Rule 59 Motion, not to initiate a Rule 59 process here, but to prevent a repeat of that error and to prevent Goldman from relying on a prior error of law.

## RELEVANT FACTS

Mr. Dalal's employment with Goldman ended in August 1999, within a month of the company's initial public offering. Although Goldman was not obligated to give Mr. Dalal any award at the time of the IPO, it did in fact do so, awarding him vested stock and issuing a certificate with his name on it. At the time, the firm promised all employees that they would be

---

[1] The motion was served on him via Fedex on July 25, 2007. Therefore, this response is timely filed, per Rule 6(a) of the FRCP, which excludes weekends and holidays, and to which an additional three days have been added, per Rule 6(e).

1

able to keep the stock even if they left the firm, a promise which in the case of Mr. Dalal stands recorded in the handwriting of a managing director (and which was presented as evidence at arbitration and likely helped him win his case). Those facts were major factors in Mr. Dalal's decision to walk away from his annual compensation and not even ask his next employer to compensate him for that loss, believing that the IPO Award was compensation enough. Those shares of stock were valued at about a quarter million dollars at the time Mr. Dalal initiated the arbitration and are valued at over half a million dollars today. That was the bargain the parties entered into, and that is the reason Mr. Dalal honestly listed the lost annual compensation as an alternative theory of recovery, not as an additional theory of recovery. Had he been allowed to retain the vested stock, he would never have brought suit for recovery of lost compensation.

The bargain was broken in 2002 (not in 1999, as falsely claimed by Goldman Sachs). That procedural context is also pertinent to this motion. Firstly and preliminarily, Goldman sent Mr. Dalal a preliminary notice dated June 5, 2000 stating that it intended to renege on its promise on the one-third of the award that had come due. The letter was sent by regular mail, and given that the post office has informed Mr. Dalal that express mail between Washington DC and New York City takes 1 day, priority mail takes 2-3 business days and regular mail still longer, the earliest the preliminary notice was received by Mr. Dalal could not have been earlier than 4-5 business days after mailing, and likely later if it was not mailed on the day it is dated. All that suggests preliminary notice was not received until June 12 2000 or thereabouts.

Furthermore, even then, Mr. Dalal was not put on notice on the breach of his bargain with Goldman. The written agreement among the parties, and verbal communications thereafter, made clear that Goldman retained the right to finalize its decision and that no legal process could be initiated until then. At the time, the firm also asked him to submit reasons why the decision

2

should not be finalized. In other words, Goldman itself set forth the June 2000 letter to be an initiation of the process of terminating the IPO Award, not as a final decision on its part, and it gave Mr. Dalal reason to believe the decision was reversible. After exchanges of several letters, per the process set forth in the agreement, Goldman Sachs confirmed termination via a letter dated January 23, 2002, likely delivered no earlier than January 30, 2002. The prior decision was to remain unchanged. The sole basis for termination of the IPO Award in Goldman Sachs' letters was the claim that Dalal had engaged in competitive activity. \

Only then, in 2002, not in 1999, was Mr. Dalal put on notice that the bargain had been breached, and only then could he have realized that the IPO Award had been a trick intended to dupe employees from focusing on the bigger picture.

Thereafter Mr. Dalal engaged in communications with both Goldman's management to resolve the issue, as well as with the NYSE with regard to venue, jurisdiction and other matters, and it was only upon the resolution of those communications over 2003 and 2004 that he filed for arbitration in 2004. **Most importantly, Mr. Dalal was prohibited from engaging in any litigation on the matter until disposition of the matter by Goldman, which did not happen until 2002, not 1999. Any litigation with Goldman prior to final determination of the IPO Award would have automatically triggered termination of the IPO Award.** That fact alone prohibits Goldman from claiming that the limitations period ran any earlier, having placed Mr. Dalal in a Catch-22 situation.

### ARGUMENTS: PART 1

**I. Goldman's motion incorrectly asserts that the May Opinion has already dismissed the first four counts of the Complaint**

All that the May Opinion did was to dismiss any claims sourced from the FAA and it made no mention of any specific count of the Complaint. In fact, only two of the four counts

even reference the FAA and which in any event rely on alternative laws as well. Application of the FAA's statute of limitations to non-FAA claims is barred for reasons set forth in Part 2 of this motion, and this Court should use this motions procedure to correct any legal error in the May Opinion, not to amplify it. Doing otherwise would run afoul of the US Supreme Court's finding that the FAA was not intended to occupy the entire field of arbitration and simply because a matter has been arbitrated does not trigger the application of the FAA.

## II. Goldman's motion misuses the doctrine of res judicata to engineer what would be a blanket application of the FAA's limitations period to non-FAA claims

Res judicata is inapplicable both as a matter of law and fact. Firstly, as a matter of law, Goldman makes the unremarkable argument that multiple claims arising under the same statutory scheme or contractual law, if covering the same claim, can be considered under res judicata. But that is hardly the legal context here, for this Court's May Opinion has already distinguished between FAA claims and non-FAA claims. The US Supreme Court too has held that the FAA was never intended to occupy the whole field of arbitration, which is what Goldman seeks to do by seeking application of res judicata to apply the FAA's limitations period to non-FAA claims.

As a matter of fact too, Goldman's reliance on res judicata is unavailing. Goldman misleads this Court by not mentioning the different origins of the alternative claims. The IPO Award related to vested stock and was a one time award, made at the time of the company's IPO, calculated on total years of service, and thus not a form of annual compensation. By contrast, the quantum meruit claim and the breach of covenant of good faith and fair dealing (the subject of which is the unjust enrichment claim) arise out of forfeited annual compensation. Nothing dismisses Goldman's argument than its own summation (*Goldman's motion at 2*) that the claim for vested stock amounted to $238,000 (stock now valued at almost half a million today) and the claim for a "pro-rated bonus in the amount of $375,000 for his work" at Goldman. The dramatic

4

difference between the dollar values of those claims exists precisely because those two claims arise out of completely different rights, the vested stock an award made to all employees at the time of the IPO and the quantum meruit claim rooted in an annual compensation claim.

The reason why the quantum meruit and unjust enrichment claims are set as alternative theories of recovery, and not as additional claims, is not because those claims are identical but merely because Mr. Dalal does not seek to obtain any more compensation than he bargained for. Goldman was not obligated to give Mr. Dalal any award at the time of the IPO but did in fact do so, awarding him vested stock (with no requirements whatsoever to continue his employment with the company) and promising him the right to keep it even if he left the firm. Those facts became a major factor in Mr. Dalal's decision to walk away from his annual compensation and not even ask his next employer to compensate him for that loss, believing that the IPO Award was his. It was only when that bargain was disturbed in 2002 that he felt the need to raise the claim of quantum meruit and unjust enrichment, but even then did so only as an alternative theory of recovery.

However, that procedural history or legal presentation in no way suggests the claims to be one and the same but merely reflective of a decision by Mr. Dalal not to raise the quantum meruit claim if he received the vested stock that is his due. So although the quantum meruit claim and unjust enrichment claim arose only when the benefit of that bargain was broken, and arose at the same time, it cannot be said that the two claims are identical. The different dollar amount of each dismisses such an assertion.

Goldman ignores this reality by relying on an email sent by Mr. Dalal, acting as pro se counsel, to opposing counsel. Even ignoring the awkwardness of including a confidential and routine email among the parties, it is clear that the email exclusively focused on the issue of

whether the summons should be served to opposing party or to opposing counsel, and all that Mr. Dalal was discussing was that, under New York Law, he is aware that the opposing party has already retained counsel, having already arbitrated this case. At no point in the email did he suggest that there is no new claim *per se*. Even if he is assumed to be stating so, as Goldman claims, that in of itself does not lead to the conclusion that those claims are *identical*. Goldman's argument is on its face absurd.

### III. Goldman's motion misleads this Court by suggesting that counts five and six of the Complaint are time barred

Goldman's motion errs in concluding that counts five and six of the Complaint are time barred. It makes four clear errors in that regard. Firstly, it ignores the bargain among the parties, which clearly induced Mr. Dalal to not worry about his annual bonus, that because he was being given an IPO Award. So although the quantum meruit claim and unjust enrichment claim arose only when the benefit of that bargain was broken, it cannot be said that the two claims arose any earlier than when the benefit of the bargain was breached, which did not occur until 2002. Secondly, Goldman misleads this Court by failing to mention that the cause of action began to accrue upon receipt of a letter dated January 23 2002 (sent by regular mail, and likely received no earlier than January 30). Only then did the benefit of the bargain between Mr. Dalal and Goldman stand disturbed and only then was he put 'on notice,' and the limitations period begin to run. Until then, Goldman retained the right, per the agreement among the parties, to finalize its decision with regard to Mr. Dalal's vested stock (and in his mind, restore the benefit of the bargain). Thirdly, and most fatally, both counts of the Complaint are contained in the submissions made to the arbitration panel in 2004. Count five and six of the filing on this litigation mirror counts seven and eight of the arbitration filing. The filing at arbitration in 2004 includes Count VII (Breach of Covenant of Good Faith and Fair Dealing), a subset of which is

6

the doctrine of unjust enrichment, and Count VIII, which is specifically set forth as a Quantum Meruit Claim). **Fourthly, and finally, Goldman is estopped from asserting that the limitations period began to run in 1999 because the contract (one drafted by it) prohibited Mr. Dalal from initiating *any* litigation with the firm until its own final determination of the IPO Award.** Section 4 of the Agreement covering *Termination of the RSUs and Non-Delivery Upon Certain Other Events* clearly prohibited Mr. Dalal from having a dispute "resolved in any manner that is not provided for by Paragraph 15" (*Section 4(iv)*) which paragraph set forth that "[p]rior to arbitration, *all claims maintained by you* [emphasis added] must first be submitted to the Committee in accordance with claims procedures determined by the Committee" (Section 15(a). Per this requirement Mr. Dalal submitted a detailed letter to the firm dated October 28, 2001, in which he emphasized his staffing on "7 out of 10 "red-herring deals" in the period prior" to leaving Goldman, and emphasized that that claim should not be "so easily dismissed without fair compensation" (Appendix I of 2004 Complaint).

Here one cannot but note another absurdity of Goldman's motion. Having just argued that Mr. Dalal has, through his email to opposing counsel, conceded "that his complaint does *not* assert any new claim" (Goldman Motion at 3), it then seeks to assert that those claims are barred by the statute of limitations, precisely because those are altogether new claims. If Mr. Dalal is asserting no new claims, as Goldman goes to lengths to argue, it cannot but be true that his filings in 2004 were timely.

## ARGUMENTS: PART 2

Because of Goldman's intent to seek dismissal of the remaining claims with the help of the doctrine of res judicata, and to thus piggyback the May Opinion, Mr. Dalal repeats here substantially all the arguments set forth in his Rule 59 Motion. He does so not to initiate a Rule 59 procedure but to forestall any repetition of the same legal error to the remaining claims and to remind this Court just how wrong that original opinion was.

**I. Controlling case law cannot be waived; that law holds that when there is a choice-of-law provision, timeliness is determined in accordance with that law, even if the outcome stands changed or the matter covers interstate commerce**

**IA. When there is a choice-of-law provision in a contract subject to arbitration, timeliness is a question to be determined in conformance to applicable state law, not the FAA**

Controlling law holds that when there is a choice-of-law provision set forth in a contract, that state law determines questions of timeliness, not the Federal Arbitration Act (the "FAA), even if the claim is found to relate to interstate commerce or to a right under Federal law. The US Supreme Court has held, and courts have thereafter applied, even in decisions binding on this Court, that the application of state law to the question of statute of limitations does not conflict with the FAA but advances its primary goal of encouraging arbitration through private agreements. The only conceivable context in which the FAA inevitably applies would be one in which the substantive law, namely New York's, gave no right to challenge an arbitration award, but that is not the context at all.

As held by the US Supreme Court in *Volt Information Sciences, Inc. v. Leland Stanford Jr. Univ., 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)*, and interpreted thereafter in opinions binding on this Court, the application of state law is not inimical to the goals of the FAA but instead supportive of its goal to further arbitrations through private agreement. To quote the apex court:

"There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate. Interpreting a choice-of-law clause to make applicable state rules governing the conduct of arbitration—rules which are manifestly designed to encourage resort to the arbitral process—simply does not offend the rule of liberal construction set forth in Moses H. Cone, nor does it offend any other policy embodied in the FAA" (at 476)..."The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration"..."Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit...**Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA**" (at 479).

This Court was never in doubt that the contract among the parties has a clear choice-of-law provision, specified in both parties' motions as New York Law.[2] This Court even cited *Ekstrom v. Value Health, Inc., 68 F. 3d 1391, 1395-96 (DC Cir. 1995)* to reach the same conclusion, even on the issue of statute of limitations. In that case, Chief Judge Harry T. Edwards of the DC Court of Appeals noted that under the District of Columbia's choice of law provisions, the substantive law of the state applies, based on the choice of law provision in the parties' agreement, and that the FAA did not preempt state law on statute of limitations because that state law did not conflict with "the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms." *Id.* [Volt]; see also *Perry v. Thomas, 482 U.S. 483, 490-91 (1987)*." (*Ekstrom, as cited*). Mr. Dalal pleads this Court not overlook binding precedent. Not only has the DC Court of Appeals applied the US Supreme Court's decision but also so has the New York Court of Appeals.[3]

---

[2] Here Mr. Dalal includes the full citation (with no emphasis added, for it was originally set in BOLD/ ALL CAPS therein, *1999 Formula RSU Award Areement at 6*, included as Appendix B):
> THIS AWARD SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAWS

[3] Although that decision is not binding on this Court, it is cited here because the substantive law is New York's. The case was *Smith Barney, Harris Upham & Co. v. Luckie, 85 N.Y.2d 193, 623 N.Y.S.2d 800, 647 N.E.2d 1308 (1995)*, in which the court, having determined that the parties had

**IB. This Court makes a double error of law, for it not only rejected controlling law but accepted a legal theory that is unavailing and inapplicable to the facts of this dispute**

Even more erroneously, this Court's application of the FAA relies on a precedent that is unavailing. Mr. Dalal humbly posits that the Opinion's reliance on *Loewen v. United States*, *2005 WL 3200885* **stands for the unremarkable proposition that two transnational parties, one of which is the Federal government of this country, when placed in a dispute arising under an international treaty (namely the North Atlantic Free Trade Agreement) and arbitrated before the World Bank's International Centre for Settlement of Investment Disputes (established under the Convention on the Settlement of Investment Disputes between States and Nationals of Other States) must proceed under the FAA.** Furthermore, this Court cited still more precedents from that case, doing which was not only wrong but likely the temptation that caused this Court to make errors of fact too (as set forth in Argument IV).

**IC. This court is obligated to apply the correct legal principle, especially when its own legal theory is unavailing and the choice-of-law provision triggering application of the correct law was made known to this Court by Mr. Dalal's Response Motion**

Mr. Dalal directed this Court's attention to the choice-of-law provision of the agreement between the parties, and did so both in his Complaint and in his two motions.[4] This Court was certainly aware of the law in *Ekstrom*. Yet it refused to apply its own legal principle, and Mr. Dalal humbly points to clear errors in that refusal.

---

selected New York Law, determined that it was not preempted by the FAA, the case of course citing *Volt*. Furthermore, that court explicitly focused on the need to recognize the split in authority post-Volt over the issue of preemption, and the need to reject the line of cases favoring the FAA because those cases generally relied on pre-Volt case law.

[4] The Complaint refers to New York Law on pages 5, 6, 9, 10 and 13, and in each of the counts two through six. It also clearly stated: "In terms of the choice of law, the contract sets forth New York law." *(Paragraph 35 at 11)*. Mr. Dalal's response to Goldman's motion to dismiss is similarly rich with references to "NY Law" on the question of service and timeliness and to "New York Law" on the question of which law sources the remedy. Also: "Equally truly, the only instance in which Goldman wrote the contract in 'Bold/ All Caps' style was in reference to New York law." (*Complaint at 7*).

Firstly, the individual rules of a court can never relieve it of the obligation to correctly identify and apply relevant law. That is especially so since this Court was aware of the choice-of-law provision in the underlying agreement—the only fact needed for the correct law to apply.

Secondly, Mr. Dalal had emphasized in his motions that there was no exclusive FAA Claim in his Complaint.[5] The two counts of the Complaint which mention the FAA also cite other laws. As such, there was no reason to presume any remedy to be exclusively derived from a right under the FAA. While it is true that Goldman had made a conditional, 'if-then' argument on the purported FAA claims, and that therefore there was an increased possibility that the FAA may be applied, Mr. Dalal met his burden at the time of response when he repeatedly stated that he was making no claim that was exclusively an FAA claim. He also he still never failed to mention New York Law as the choice of law.[6]

In other words, Mr. Dalal relied on the only two scenarios that were plausible: that timeliness would be determined as a procedural matter, and if not, the substantive law of New York would be applied. There was no reason to make any more arguments against the application of the FAA, especially since this Court's reliance on *Loewen v. United States, 2005 WL 3200885* is unavailing (for reasons detailed later). Two, the analysis this Court has set forth to apply the FAA was not argued by either party either, except as a conditional argument by Goldman. Three, this Court has set a legal theory that runs afoul of Judge Edward's finding in

---

[5] Mr. Dalal's *response memorandum* to Goldman's motion to dismiss stated that "Goldman is incorrect in asserting that service by mail turned Mr. Dalal's Complaint to a motion under FAA," that "Goldman has mischaracterized the Complaint as an FAA motion to bolster its argument that Mr. Dalal's filing is time barred," that "Goldman should not prevail on the technical argument that service was not effected…and that therefore the Complaint is an FAA motion (which it is not)."
[6] "In terms of the choice of law, the contract sets forth New York law. While the substantive law is *contractually set forth as New York's*, Mr. Dalal notes that courts in the District of Columbia typically apply DC Law as the procedural law." (*Add. Emph. Complaint at 11*).

11

*Ekstrom*. Mr. Dalal pleads the principle that no party should be expected to contemplate any and all contingencies arising out of errors of law or errors of fact, and in this context, both.

**II. Dispute does not relate to interstate commerce, or to a securities transaction, or to a brokerage contract, or to the employment of a broker, but to a private contract with a choice-of-law provision of New York law, so application of federal law is neither inevitable nor appropriate**

Irrespective of how this Court determines Argument I, the FAA still cannot be applied, because Mr. Dalal has set forth no claim exclusively arising out of Federal Law, and therefore, there is no exclusively FAA Claim in his Complaint. Every count of the Complaint has at least one other law relied upon. The dispute does not relate to interstate commerce, does not relate to a securities transaction, does not relate to a brokerage contract or to the employment of a broker. The underlying agreement is not even an employment contract, although that was the erroneous conclusion of this Court.[7] If the right does not arise out of the FAA, the remedy cannot be deemed to be unavoidably rooted in the FAA. That assumption offends the US Supreme Court's determination that the FAA has no preemptive provisions and was never intended to occupy the entire field of arbitration. It would certainly make moot state arbitration laws on the question of timeliness.[8] Thus even without the obvious problem with *Loewen*, this Court cannot apply the FAA, for each count of the Complaint has alternative theories of recovery, and most make no mention of the FAA at all.

**III. New York case law on arbitration clearly tolls the 90-day limitations period per *Nassau Ins. Co. V. Jiminez***

---

[7] This Court described the agreement as an "underlying employment contract" (*Opinion at 7*), which it explicitly is not. Instead, it is a private contract about vested stock, no more.

[8] To be sure, the only reason this matter was brought to a Federal Court was because the amount involved is greater than $75,000 and because the arbitration proceeding was held in Washington, DC. Neither fact *per se* triggers the application of Federal Law, not unless the claim specifically arises out of the FAA, which it does not.

12

Mr. Dalal's reliance on state law is not at all academic, for it stands to change the Opinion. New York case law holds that the arbitration panel's decision dated March 9, 2006 superceded the prior award dated December 7, 2005. Per *Nassau Ins. Co. v. Jiminez (1982, Sup) 116 Misc 2d 908, 456 NYS2d 654*, the decision taken by the arbitration panel upon a request for modification supersedes the original decision and is to be considered the final award made. To cite *5 NY Jur 2d §195 Commencement and tolling of statutory period*, Mr. Dalal's Complaint was timely "**if made within 90 days of the delivery of the arbitrator's modified decision, since the modified decision supercedes the original decision and is the final award.**"

**IV. Contrary to this Court's finding, the request for modification made no mention of anonymity but clearly sought a material increase in the award**

Whether New York Law or the FAA is deemed to apply, dismissal is not warranted because the Opinion relies on a factual error, erroneously concluding that the "December 2005 Award was final because it unambiguously resolved all claims...and only left unresolved the ministerial issue of plaintiff's request for anonymity" (*Opinion at 6*). In fact, nowhere in the request of Feb 8 2006 is there any mention of the request for anonymity, only the request for a dramatic increase in the amount of the award. **Quite to the contrary, anonymity was resolved by the January 20, 2006 decision, and Mr. Dalal's subsequent Request for Modification on February 8, 2006 and the arbitration panel's decision on March 9 2006 dealt with a revision of the award that was neither ministerial nor subsidiary.** To quote:

> "I make the request on the strength of well-settled New York law, which provides that a party injured by a breach of contract is entitled to that amount of damages necessary to place the party in as good a position as it would have been in had the other party fully performed the contract. *(See Terwilliger, 206 F.3d at 248)*."

That error in turn allowed this Court to borrow again from *Loewen*'s citation of the *Fradella* decision, a misplaced citation because the context to which it is applied is an error of fact.

13

## SUMMARY

For all the reasons set forth above, Goldman's motion must be rejected. The due process of the law should not be truncated by misleading motions, for it leads to evident errors of law and fact, as listed above, and also because the trial is in any event likely to be short and speedy.

August 8th 2007

Respectfully Submitted,

*[signature]*

BY SANDEEP DALAL
PLAINTIFF, *PRO SE*

COPY TO SULLIVAN & CROMWELL

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 9th day of August, 2007, he served a true and correct copy of the foregoing Plaintiff's Response to Goldman's Dismissal Motion in the Civil Action # 06-CV-1061-EGS, as follows:

Clerk's Office
US District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, DC 20001
(202) 354-3000
(By Fedex: x1 Chamber's Copy; 1x Clerk's Original)

GOLDMAN SACHS & CO.
C/o Jordan T. Razza
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, NW
Washington, DC 20006-5805
(202) 956-7500
(By Fedex: x1 Copy)

*Signed By*
Sandeep Dalal
*Pro Se*
2111 Wisconsin Avenue, NW
Washington, DC 20007
(202) 342-1205